IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Alexandria Division**

MAY 2 2 2012

| | | |
|---|---|---|
| ARTHUR GORDON, | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 1:11cv1315** |
| | ) | |
| JANET NAPOLITANO, | ) | |
| *Secretary, U.S. Dept. of Homeland Security,* | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiff, a federal annuitant, claims that individuals at the Transportation Security Administration ("TSA") violated the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et. seq.*, when they refused to extend a salary offset waiver which had allowed plaintiff to collect his full salary without any offset for the amount of his annuity. Plaintiff, who was 58 years old at the time, further claims that he was retaliated against for contacting the EEO office with respect to the alleged discrimination. Defendant filed a motion to dismiss or for summary judgment. Because matters outside the pleadings are considered, defendant's motion is treated as a motion for summary judgment. *See* Rule 12(d), Fed.R.Civ.P.; Rule 56, Fed.R.Civ.P.

I.[1]

Typically, if an annuitant is rehired by the federal government after retirement, the annuitant's salary is reduced by the amount of their annuity. The U.S. Office of Personnel Management ("OPM") is permitted, however, to delegate to an agency the authority to waive such salary offsets "on a case-by-case basis, for an employee serving on a temporary basis, but

---

[1] The facts recited herein are derived from the record as a whole and are undisputed unless otherwise noted.

only if, and for so long as, the authority is necessary due to an emergency involving a direct threat to life or property or other unusual circumstances." 5 U.S.C. § 8344(i). TSA, which was established in November 2001, was granted such authority on February 27, 2002 based on its urgent need to hire experienced professionals and lack of other staffing options, the enormity of the Aviation and Transportation Security Act mandates, and the direct threat to life and property demonstrated by the September 11th attacks. Specifically, TSA was granted the authority to provide such waivers for periods of up to five years, but importantly, waivers could only be granted where there were no other reasonable staffing options, and the waivers had to be terminated when the conditions that made them necessary changed. *See* Def. Ex. 18-1.

On August 27, 2004, plaintiff, then still employed by the Bureau of Alcohol, Tobacco and Firearms ("ATF"), was offered the position of Assistant Federal Security Director for Law Enforcement ("AFSD-LE") at Baltimore/Washington Thurgood Marshall Airport ("BWI"). The offer noted that, as required by law, plaintiff's salary would be reduced by the amount of any annuity. On August 30, 2004, plaintiff declined the offer noting that while he was a current federal employee, he was requesting a five-year salary offset waiver so that he could retire and be rehired by TSA and receive both a full salary and annuity. Plaintiff's request for a waiver was granted based on findings (i) that plaintiff would refuse employment without it, and (ii) that there was no other reasonable staffing options. But plaintiff's waiver was only approved for a period of three years because there was no supporting rationale for a five-year waiver and no plan to identify a pool of candidates who had the potential to be a permanent successor. Subsequently, plaintiff retired from ATF, effective November 12, 2004, and was appointed as the AFSD-LE at BWI for a period not to exceed three years, effective November 14, 2004. During his tenure with TSA, plaintiff also served in his personal capacity as president of the Federal Law

Enforcement Officers Association (FLEOA), a volunteer, nonpartisan professional association for federal law enforcement officers that provides them with legal assistance and representation and also lobbies for the passage of legislation beneficial to them.

On June 12, 2006, in response to a request to extend TSA's waiver authority, the OPM delegated new salary offset waiver authority to the Department of Homeland Security ("DHS"), which subsequently re-delegated that authority to TSA.[2] Specifically, the OPM delegated the authority to extend current waivers from five to seven years, but noted that any request to extend a current waiver must demonstrate that conditions justifying the initial waiver still existed. *See* Def. Ex. 18-7, Def. Ex. 18-8. In a letter dated November 14, 2006, plaintiff was advised that TSA's Executive Resource Council ("ERC") reviewed the new grant of authority, considered the long term interests of the agency, and recommended that most incumbents not receive a waiver extension, and that the Assistant Secretary for TSA concurred with this recommendation. As a result, the letter stated that very few waivers would be extended, and that plaintiff would be notified approximately six months prior to the expiration of his waiver regarding the specific decision in his case. The letter reiterated that waivers would be extended only where no other reasonable staffing options existed.

Plaintiff alleges that two senior TSA employees who participated in ERC meetings, namely Gale Rossides, who was 53 in 2008, and Michael Restovich, who was 60 in 2008, made statements that demonstrated discriminatory animus based on age, specifically:

- On October 18, 2005, Rossides told plaintiff that she was not in favor of renewing the waivers because it would block the career paths of younger employees and that the rehired annuitants "would have to step aside so the younger people could move up."

---

[2] In March 2003, TSA was moved from within the Department of Transportation to within the newly-established Department of Homeland Security.

- On September 19 or 20, 2006, at the TSA Federal Security Director Conference in St. Louis, Restovich, referring to rehired annuitants, stated "I see you as old, white and pathetic and it is time to rid ourselves of this type of leadership."

- On September 26 or 27, 2006, at the TSA Northeast Area Federal Security Director Conference in New York, Restovich stated that the rehired annuitants "would have to step aside so TSA could hire more minorities," and, "[l]ook around, you're all old, white and gray haired."

- In September 2006, at the TSA West Coast Federal Security Director Conference, Restovich made statements similar to those made in New York and St. Louis.

- In September 2006, at the TSA Western States Conference for Model Workplace Coordinators, Restovich stated that, "TSA is too white and too gray and changes are needed to reflect the diverse society in which we live."

On January 11, 2007, plaintiff contacted the EEO office by telephone to file an informal age discrimination complaint. Plaintiff filed a formal complaint in April 2007.[3] Plaintiff alleges that on January 18, 2007, TSA Counsel Ron Kilroy advised him that TSA had some ethical concerns regarding his service as FLEOA president. On February 5, 2007, Elizabeth Buchanan, TSA's Deputy Chief Counsel, sent a memorandum to plaintiff outlining the ethics rules governing his activities as president of FLEOA in light of his status as a TSA employee. On February 16, 2007, FLEOA's general counsel – also counsel for plaintiff in this matter – responded to Buchanan suggesting her descriptions of potential conflicts of interest were overly broad and requesting clarification. On February 20, 2007, plaintiff's attorney wrote a second letter to Buchanan, suggesting that Buchanan's initial letter was an act of retaliation in response to plaintiff's contact with the EEO office. On March 23, 2007, Buchanan sent plaintiff a revised memorandum, modifying portions of the original memorandum in response to the points made

---

[3] In his complaint, plaintiff states that he filed a formal discrimination complaint on January 29, 2007, but in his declaration and opposition to summary judgment, plaintiff states that his formal complaint was filed in April 2007. Whether the formal complaint was filed in January 2007 or April 2007 has no impact here, and plaintiff's contact with the EEO office on January 11, 2007 is treated as a protected activity for purposes of plaintiff's retaliation claim.

by plaintiff's counsel. Buchanan also responded to plaintiff's counsel that neither she nor any other TSA headquarters ethics official knew of plaintiff's contact with the EEO office prior to receiving the letter from plaintiff's counsel on February 20, 2007 and that the initial memorandum was sent because ethics officials learned of plaintiff's service as president of FLEOA and determined that he had not received advice regarding applicable ethical rules.

On May 7, 2007, TSA's Assistant Administrator for Human Capital informed plaintiff that his waiver would not be extended beyond the termination of his original three-year appointment. Plaintiff was advised that if he wished to be considered for continued employment without a waiver, he should notify his manager within ten days. On June 8, 2007, a TSA field operations official contacted plaintiff, noting that plaintiff had not specified whether he wished to be considered for continued employment without a waiver. Plaintiff responded that his decision to remain with TSA, with or without a waiver, would be decided by the EEOC or federal court based on his discrimination complaint. Plaintiff alleges that previously, on February 2, 2005, Dan Sullivan, the TSA Assistant Director for Law Enforcement, told plaintiff that plaintiff would receive a two-year extension on his waiver.

TSA subsequently announced it was seeking applicants for six AFSD-LE positions, including plaintiff's position at BWI, and sought applications by October 5, 2007. The announcement resulted in twenty applicants deemed qualified as competitive candidates, as well as applications from four persons who could be reassigned to the position non-competitively. Plaintiff did not apply. Ultimately, TSA selected a retired Secret Service agent in his fifties with similar federal law enforcement experience to plaintiff, who would serve without a waiver. Plaintiff's appointment expired on November 13, 2007, and he separated from TSA.

## II.

Summary judgment is appropriate where, on the basis of undisputed material facts, the moving party is entitled to judgment as a matter of law. Rule 56(a), Fed.R.Civ.P. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The question on summary judgment is "whether a reasonable jury could find in favor of the non-moving party, taking all inferences to be drawn from the underlying facts in the light most favorable to the non-movant[.]" *In re Apex Express*, 190 F.3d 624, 633 (4th Cir. 1999). Rule 56 mandates summary judgment if the nonmoving party, after a reasonable time for discovery, "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. To defeat summary judgment, the non-moving party may not rest upon a mere "scintilla" of evidence, but must set forth specific facts showing a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## III.

Plaintiff's first claim is that the ERC impermissibly considered age in the decision not to extend his waiver.[4] The Fourth Circuit has outlined "two avenues of proof" through which "a plaintiff may avert summary judgment and establish a claim for intentional... age discrimination." *Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 284 (4th Cir. 2004). Specifically, a plaintiff may establish such a claim either (i) by "demonstrating through direct or circumstantial evidence that... age discrimination motivated the employer's adverse employment decision," or (ii) by way of the *McDonnell Douglas* framework "under which the employee, after

---

[4] In his complaint, plaintiff states that he was terminated, but the undisputed facts demonstrate that his appointment expired and he did not seek reappointment. Plaintiff acknowledges this fact in his opposition to summary judgment, where he frames the central question on the discrimination claim as "[w]hether Mr. Gordon's age [58 at the time] was a factor in TSA's decision not to extend the salary offset waiver to Mr. Gordon prior to the expiration of his term."

establishing a *prima facie* case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." *Id.* at 284-285.  Plaintiff asserts the *McDonnell Douglas* framework does not apply because there is direct evidence of discrimination. *See TWA, Inc. v. Thurston*, 469 U.S. 111, 121 (1985).  As a result, the analysis proceeds by way of the first avenue.[5]

## A.

An unlawful decision may involve both permissible and discriminatory factors. *See Hill*, 354 F.3d at 284.  The parties dispute whether the ADEA is violated only if plaintiff's age was the "but for" cause of the decision not to extend the waiver or whether there is an ADEA violation if plaintiff's age was considered at all, even if not a determining factor.  A brief review of the relevant Supreme Court and circuit authority aids in resolving this dispute.

In *Price Waterhouse*, a Title VII case held applicable to ADEA actions,[6] the Supreme Court held that when a plaintiff demonstrates an impermissible consideration was a factor in a decision, the burden then shifts to the defendant "who could escape liability by proving that it would have made the same decision in the absence of the discriminatory motivation." *Hill*, 354 F.3d at 284 (*citing Price Waterhouse v. Hopkins*, 490 U.S. 228, 276 (1989)).  In response to *Price Waterhouse*, Congress amended Title VII in 1991, eliminating "the employer's ability to escape liability in Title VII mixed-motive cases by proving that it would have made the same

---

[5] It is worth nothing that plaintiff's claim would fail under the *McDonnell Douglas* analytical framework.  Plaintiff fails to establish a *prima facie* case because he was replaced by someone within the protected class. *See Hill*, 354 F.3d at 285.  Moreover, even if plaintiff had established a *prima facie* case, his claim under this proof scheme still would fail because no reasonable jury could find that the reason given by TSA for failing to renew the waiver was pretextual. *Id.*  TSA lacked the discretion to renew the waiver in the circumstances.

[6] *See, e.g., EEOC v. Warfield-Rohr Casket Co.*, 364 F.3d 160, 164 (4th Cir. 2004).

decision in the absence of the discriminatory motivation," and instead, allowing an employer only to use such proof to limit the available remedies. *Hill*, 354 F.3d at 284. Of course, this Congressional intervention only pertained to Title VII, not ADEA, and in ADEA actions, the Fourth Circuit continued to apply the *Price Waterhouse* burden-shifting framework. *See EEOC v. Warfield-Rohr Casket Co.*, 364 F.3d 160, 164 n.2 (4th Cir. 2004). As a result, employers in this circuit could continue to escape liability in ADEA actions by demonstrating the same personnel decision would have been made in the absence of any discriminatory animus. *Id.* at 164.

Recently, the Supreme Court held that the *Price Waterhouse* burden-shifting framework cannot apply to ADEA claims because ADEA's statutory language requires "the plaintiff retain[] the burden of persuasion to establish that age was the 'but-for' cause of the employer's adverse action." *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 177 (2009). In *Gross*, however, the Supreme Court reached its conclusion based on a close reading of the ADEA provision that creates a cause of action against private employers, 29 U.S.C. § 623(a). Yet, at issue here is not § 623(a), but rather § 633a, which creates a cause of action for federal employees. And importantly, the language of § 633a differs from § 623(a). Specifically, § 623(a) prohibits personnel decisions made "because of" a person's age, while § 633a provides that personnel actions "shall be made free from any discrimination based on age." Based on this difference, the Court of Appeals for the D.C. Circuit recently held that *Gross* did not apply to claims brought pursuant to § 633a. *See Ford v. Mabus*, 629 F.3d 198, 205-206 (D.C. Cir. 2010). According to the D.C. Circuit, a plaintiff may prevail on an age discrimination claim against a federal employer by demonstrating that age was a factor in the employer's decision, even if it was not the "but for" cause. *Id.*

-8-

The D.C. Circuit's analysis has substantial force, but Fourth Circuit precludes its application here.  Prior to *Gross*, the Fourth Circuit applied the *Price Waterhouse* framework to ADEA claims brought under §633a against federal employers, stating that the same standard applied to the federal employers as private employers.  *See Baqir v. Principi*, 434 F.3d 733, 744 (4th Cir. 2006).  Thus prior to *Gross*, albeit within the context of the *Price Waterhouse* burden-shifting framework, the Fourth Circuit permitted a federal employer to avoid liability where age was a factor so long as the same decision would have been reached without considering age.  *Id.* at 745.  In other words, a claim against a federal employer would not survive if the defendant could demonstrate that age was not the "but for" cause of the decision at issue.  As a result, the conclusion of D.C. Circuit, which allows a plaintiff to prevail against a federal employer where age is merely a factor, cannot be applied in this circuit, and plaintiff may only prevail if his age was the "but for" cause of the decision not to extend his wavier.  *See Doe v. Charleston Area Medical Center, Inc.*, 529 F.2d 638, 642 (4th Cir. 1975) (Fourth Circuit precedent must be followed by district court).[7]

## B.

Plaintiff alleges that the ERC recommendation not to extend most waivers and subsequent decision not to extend his waiver were improperly based on age.  It is true that TSA had the authority to extend waivers in some circumstances, but it is also clear from the record that this authority could only be exercised in extremely narrow circumstances, namely where no other reasonable staffing option existed.  Moreover, the undisputed facts demonstrate that these

---

[7] It is worth noting that the Ninth Circuit and many district courts have considered *Gross* applicable to actions brought pursuant to § 633a, most without analysis of the statutory language. *See Shelley v. Geren*, 666 F.3d 599, 606-607 (9th Cir. 2012); *Murthy v. Shinseki*, No. 08cv2015, 2010 WL 2178559, at *5 (C.D. Ill. May 28, 2010) (collecting cases).

circumstances did not exist with respect to plaintiff's position where an announcement for his and five similar positions resulted in twenty-four qualified applicants. Nonetheless, plaintiff alleges that the statements by Rossides and Restovich are direct evidence that the decision not to extend plaintiff's waiver was based on his age.[8] Even accepting these statements as true, summary judgment must be granted for defendant because the undisputed evidence shows that age was not the "but for" cause of the decision not to extend plaintiff's waiver; rather, plaintiff's waiver could not be extended because the position could be filled by someone without a waiver. *See Baqir v. Principi*, 434 F.3d 733, 744-745 (4th Cir. 2006) (even if comments attributable to decision-maker were reflective of age-based animus, summary judgment appropriate where there was undisputed evidence that plaintiff would have been terminated anyway). *See also Lindsey v. Walgreen Co.*, 615 F.3d 873, 876 (7th Cir. 2010) (same).

It is also important to recall that there is no ADEA violation where an employer acts on the basis of a factor that correlates with age. *See Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611

---

[8] Defendant objects that statements attributed to Restovich are inadmissible hearsay and cannot be considered on summary judgment. *See* Rule 56(c), Fed.R.Civ.P. This objection is well-taken; it does not appear that plaintiff was present for the statements and, as a result, even if Restovich's statements are statements by a party-opponent, *see* Rule 801(d)(2), Fed.R.Evid., they are inadmissible because they were relayed to plaintiff by unidentified third parties who have not provided affidavits. *See McCray v. Pee Dee Regional Transp. Authority*, 263 Fed.Appx. 301, 306 n. 5 (4th Cir. 2008) ("Finally, a large number of the statements put forth by [plaintiff] are based upon inadmissible hearsay, as [plaintiff] relies entirely on information relayed to him by third parties who are not party-opponents and who have not themselves provided affidavits or deposition testimony."). While in a declaration, Restovich denies saying that the rehired annuitants were "old, white, and pathetic," he admits that he used the expression "old white guys" in a kidding way to describe himself and the majority of Federal Security Directors present at a meeting. Restovich says he intended merely to stress the important goals of cultivating diversity in leadership and developing the next generation of leaders. Restovich further avers that it was later brought to his attention that these comments were not well-received by some individuals, and he took steps to convey reassurances that management was not trying to force anyone out. In any event, for purposes of this motion, it is assumed that Restovich's statements, as recounted by plaintiff, are true and admissible, as summary judgment must be granted in favor of defendant even if that is so.

-10-

(1993) (ADEA does not prohibit decisions based on pension status, even though pension status correlates with age). As a result, actions taken against rehired annuitants, such as failing to extend salary offset waivers, cannot be considered discrimination based on age simply because most rehired annuitants are older. And importantly, the contested decision did not involve terminating or refusing to re-appoint plaintiff, but simply phasing out his waiver, as required by law. This is evident from the fact that plaintiff was given the opportunity to seek re-appointment and the fact that plaintiff's replacement was in his fifties.[9] In sum, on this record, whether the burden rests with the plaintiff or defendant, no reasonable fact-finder could conclude that plaintiff's age was the "but for" cause of his waiver not being extended. Rather, because plaintiff's position could be filled using normal recruitment methods, TSA lacked the authority to extend the waiver.[10]

Moreover, even if the standard set forth by the D.C. Circuit in *Ford v. Mabus* were adopted here, plaintiff's claim would still fail. Because plaintiff's position could be filled without a waiver, TSA had no authority to extend the waiver, and the relevant decision-makers

---

[9] Plaintiff attaches an email exchange between two TSA employees in which one individual states that he believes it was never "their" intention to hire any of the rehired annuitants after the waivers expired. Defendant objects to this email as hearsay, as unauthenticated, and as including speculation about the state of mind of unidentified individuals referred to only as "they." These objections have substantial force, but even if taken as true, the e-mail would not affect the outcome here. Plaintiff cannot argue that he was discriminated against by not being rehired where the undisputed facts make clear he never sought reappointment. The only alleged discriminatory decision was the failure to extend plaintiff's waiver, and as discussed *supra*, that decision was compelled by law in the circumstances. Plaintiff's speculation that he would not have been rehired had he reapplied is simply not the basis of this action.

[10] Defendant also argues that even if TSA actively sought to place younger individuals in leadership positions that would not have been impermissible because mandatory retirement ages for law enforcement officials, such as plaintiff, are exempted from the ADEA. *See* 5 U.S.C. § 8335(b)(1); *Epps v. U.S. Capitol Police Bd.*, 719 F.Supp.2d 7, 15-16 (D.D.C. 2010). Because age was clearly not the "but for" cause of defendant's decision, this argument need not be addressed.

did exactly what they were required to do in the circumstances.  No other factors, such as plaintiff's age, could have been considered because the alleged "decision" was not a discretionary determination but rather the implementation of a mandated result.  To hold otherwise would be to give plaintiff a remedy against defendant where defendant's action was compelled by law.

## IV.

Plaintiff also claims that the communications regarding conflict-of-interest statutes were in retaliation for his contact with the EEO office.  In order to establish a *prima facie* case of retaliation, plaintiff must show that "(1) he engaged in protected activity; (2) an adverse employment action was taken against him; and (3) there was a causal link between the protected activity and the adverse action." *Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006).  Defendant argues that the undisputed facts make clear that there was neither an adverse action nor any causal link between the protected activity and the putative adverse action.

## A.

To prove a causal link, plaintiff must be able to demonstrate that the author of the alleged adverse action – here the letter from Buchanan – knew that plaintiff had engaged in a protected activity.  *See Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007).  Defendant argues that there is no evidence that Buchanan, who sent the allegedly retaliatory memorandum, knew that defendant had contacted the EEO office.  In this respect, defendant provides (i) the letter written by Buchanan to plaintiff's counsel stating she had no knowledge of plaintiff's contact with the EEO office, but this letter was not signed under oath, and (ii) a declaration in which Buchanan states she was not aware of plaintiff's "prior EEO activity," but the declaration

is ambiguous with respect to whether or not plaintiff's January 2007 contact with the EEO office is considered "prior EEO activity."[11]

Nonetheless, because plaintiff bears the burden of proving his *prima facie* case, defendant need not produce affidavits or other evidence, but need only show that plaintiff has failed to create a genuine issue of material fact with respect to the causation element. *See Carr v. Deeds*, 453 F.3d 593, 608 (4th Cir. 2006) (*quoting Celotex*, 477 U.S. at 325). Plaintiff has introduced no evidence that Buchanan – or Kilroy for that matter – knew of plaintiff's contact with the EEO office. Rather, plaintiff argues that such knowledge can be inferred by the close temporal proximity between his protected activity and the allegedly adverse action. Plaintiff argues this inference is supported by the fact that TSA management knew of plaintiff's position at the FLEOA since at least October 2005, but never previously raised potential conflicts of interest.

The Fourth Circuit has repeatedly held that summary judgment is appropriate where a plaintiff provides no evidence that a decision-maker knew of plaintiff's protected activity. *See Baqir v. Principi*, 434 F.3d 733, 748 (4th Cir. 2006).[12] On the other hand, an inference of causation for purposes of establishing a *prima facie* case can be supported by "little or no direct evidence," and some authority suggests that simply the fact that plaintiff engaged in a protected

---

[11] Defendant focuses on Buchanan's knowledge, when apparently she sent the memorandum only after another senior ethics counsel was made aware of plaintiff's role as president of FLEOA and Kilroy determined that plaintiff had not received any ethical guidance in that respect. The focus on Buchanan is appropriate because plaintiff argues that the overly broad content of the memorandum is what makes it a materially adverse action, *see infra*, and Buchanan appears to be ultimately responsible for that content. In any event, because neither the memorandum nor any other communications can be considered materially adverse actions, *see infra*, whether Buchanan, Kilroy, or anybody else involved had knowledge of plaintiff's protected activity is not dispositive in this case.

[12] *See also Shun-Lung Chao v. International Business Machines Corp.*, 424 Fed.Appx. 259, 261 (4th Cir. 2011) (unpublished); *Wright v. Southwest Airlines*, 319 Fed.Appx. 232, 233-234 (4th Cir. 2009) (unpublished).

activity and then an employer took an adverse action is sufficient for such an inference. *Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1229 (4th Cir. 1998).[13]  As a result, for purposes of this decision, it will be assumed that a reasonable jury may infer that the causation element of plaintiff's *prima facie* case is met.  For the reasons set forth below, however, plaintiff cannot establish a *prima facie* case because there was no adverse action taken against him.

## B.

Causation does not end the analysis, for in order to demonstrate an adverse action, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotations and citations omitted).[14]  Plaintiff argues that the *Burlington Northern* standard is met because the initial memorandum included what his counsel calls "absurd" assertions that plaintiff's activities on behalf of FLEOA could implicate him under criminal conflict-of-interest statutes.  A review of the memorandum and other communications, however, reveals that no jury could find that a reasonable employee would be dissuaded from making or supporting a charge of discrimination as a result of these communications.

---

[13] There is ample authority that a plaintiff may survive summary judgment where there is "very close" temporal proximity between when a defendant became aware of a protected activity and the allegedly adverse employment action. *See Shields v. Federal Exp. Corp.*, 120 Fed.Appx. 956, 963 (4th Cir. 2005) (*quoting Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). What is not as clearly established is whether very close temporal proximity between the allegedly adverse action and the protected activity, without any evidence of defendant's knowledge of that activity, is sufficient for plaintiff's *prima facie* case.

[14] Although *Burlington Northern* was a Title VII case, the Fourth Circuit has applied it to ADEA retaliation claims.  *See Harman v. Unisys*, 356 Fed.Appx. 638, 641 (4th Cir. 2009) (unpublished).

First, the initial memorandum contained no suggestion that plaintiff was in violation of any statute. Rather, it described the relevant statutes and their application, and advised plaintiff to contact Buchanan if he had any questions about the guidance provided. Nor does Kilroy's statement that TSA had some ethical concerns suggest either that TSA believed plaintiff had violated the law or that any legal or disciplinary action was to follow. Notifying plaintiff about potential conflicts-of-interest, as was done in this instance, cannot be considered an adverse action. Plaintiff is not immunized from conflict-of-interest statutes because he filed a discrimination claim, and simply being told that one must abide by the law is not an "adverse action" but merely a fact. *Cf. Wells v. Gates*, 336 Fed.Appx. 378, 385 (4th Cir. 2009) ("An employer may enforce generally applicable employment policies against its employees without creating a cause of action for retaliation."). To conclude otherwise would, in effect, preclude an agency from advising its employees on applicable law; something it must be able to do whether or not an employee has filed a discrimination claim.

Plaintiff argues, however, that because the original memorandum was inaccurately broad, it is elevated to the level of an adverse action. While unfounded threats of legal action may constitute an adverse action in certain circumstances, there were no threats here. Even though it did construe the statutes too broadly, the memorandum contained no allegation that plaintiff was in violation of those statutes. And importantly, when plaintiff's counsel notified Buchanan that the memorandum construed the applicable statutes too broadly, she issued a revised memorandum that addressed those concerns. *Cf. Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 570 (2d Cir. 2011) (letter that was later rescinded was not material adverse action); *Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1120-1121 (7th Cir. 2009) (no adverse action where a suspension is threatened but ultimately not applied); *Baloch v. Kempthorne*, 550

-15-

F.3d 1191, 1199 (D.C. Cir. 2008) (same).   Finally, there is no claim that the revised memorandum is overly broad, no allegation that any legal or disciplinary action was initiated against plaintiff, no evidence that the initial memorandum was intentionally overly broad, and no evidence that plaintiff was harmed or discouraged in any way. *See Wells*, 336 Fed.Appx. at 384-385 (*quoting Somoza v. Univ. of Denver*, 513 F.3d 1206, 1214 (10th Cir. 2008)) (although standard is ultimately objective, fact that employee continues undeterred "may shed light as to whether the actions are sufficiently material and adverse to be actionable."). As a result, because plaintiff alleged no action that a reasonable jury could find materially adverse, plaintiff has failed to make his *prima facie* case.

Furthermore, it is worth noting that even if the memorandum may be considered a materially adverse action, the undisputed record reflects a clear, non-retaliatory reason for its issuance that is not pretextual.   Buchanan issued the memorandum to advise plaintiff about potential conflicts-of-interest.   In the circumstances, it was and is entirely appropriate for Buchanan – or Kilroy for that matter – to inform a TSA employee about potentially applicable federal laws, and to be available for questions if the employee subsequently believes that advice is overly broad. *See Wells*, 336 Fed.Appx. at 385 (application of generally applicable rules does not create cause of action for retaliation). As a result, even if plaintiff had made a *prima facie* case of retaliation, his claim still fails. *See Baqir*, 434 F.3d at 747 (plaintiff must show employer's proffered non-retaliatory reason for action is pretextual).

### V.

Accordingly, for the foregoing reasons, summary judgment must be granted for defendant. An appropriate Order will issue.

Alexandria, Virginia
May 22, 2012

_____
T. S. Ellis, III
United States District Judge

-16-